UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BENNETT,<br><br>   Plaintiff,<br><br>   v.<br><br>BURTON, et al.,<br><br>   Defendants. | No. 2:21-cv-1340 KJN P<br><br>ORDER AND<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding pro se and in forma pauperis. In his civil rights complaint under 42 U.S.C. § 1983, plaintiff alleges that defendants were deliberately indifferent to plaintiff's health and safety by housing plaintiff with other inmates who had tested positive for COVID-19. Defendants' fully-briefed motion for summary judgment is before the court. As set forth below, it is recommended that the motion for summary judgment be denied.

Background

On May 5, 2022, defendants Garcia and Moreno filed a motion for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies prior to bringing the instant action. (ECF No. 32.) On May 20, 2022, plaintiff filed his opposition. (ECF No. 33.) On May 26, 2022, defendants filed a reply. (ECF No. 34.) On June 9, 2022, plaintiff filed a surreply. On October 17, 2022, defendants were informed that the court would consider plaintiff's surreply and granted defendants an opportunity to respond. (ECF Nos. 35, 39.)

1

On October 31, 2022, defendants filed their reply to plaintiff's surreply. (ECF No. 40.)

Plaintiff's Complaint

Plaintiff alleges that on December 19, 2020, defendants Garcia and Moreno violated plaintiff's Eighth Amendment rights by allowing him to be housed in an open dorm with inmates who tested positive for COVID-19, knowing that plaintiff was negative for COVID-19 at that time.[1] Once these defendants were notified and informed of these circumstances, defendants failed to intervene or remedy the situation, despite being fully aware of the risk of harm to plaintiff. (ECF No. 1 at 3.) Defendants failed to protect plaintiff by immediately removing the inmates who testified positive for COVID-19 and housing them in the tents on the yard. (ECF No. 1 at 4.) Plaintiff contracted COVID-19 and now suffers from "Post Acute COVID Syndrome," or "Long COVID," experiencing debilitating COVID symptoms. Plaintiff seeks money damages.

Legal Standards for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing

---

[1] On October 19, 2021, defendant R. Burton and plaintiff's due process and equal protection claims were dismissed without prejudice at plaintiff's request. (ECF Nos. 16, 17.)

[2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged." Id.

Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

        Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

        In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice issued May 5, 2022 (ECF No. 32-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

Facts[3]

1. During all relevant times, plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and was housed at California Health Care Facility ("CHCF").

2. Defendants Lt. U. Garcia and Sgt. F. Moreno were employed at CHCF at all pertinent times.

3. Appeal Log # 00000007475 is the 602 inmate appeal plaintiff contends exhausted the claims raised in this action.

---

[3] These facts are undisputed for purposes of summary judgment, unless otherwise noted.

4. Plaintiff did not name either Garcia or Moreno in the grievance.

5. Plaintiff exhausted appeal Log # 00000007475 through the second and final level of review.

Failure to Exhaust

Exhaustion Standards

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6; Ross v. Blake, 578 U.S. 632, 639-40 (2016). Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ] - rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

California's Administrative Exhaustion Process

In California, a prisoner is now required to follow the procedures set forth in California Code of Regulations, title 15, sections 3480-3487. Cal. Code Regs. tit. 15, §§ 3480-3487 (eff.

5

June 1, 2020). For grievances filed after June 1, 2020, inmates may now submit a written grievance containing one or more claims, subject to the requirements in section Cal. Code Regs., tit. 15, section 3482, to dispute a policy, decision, action, condition, or omission by CDCR or CDCR staff that causes some measurable harm to the inmate's "health, safety, or welfare." Cal. Code Regs. tit. 15, §§ 3481(a), 3482, 3482(a)(1) and (b), 3482(a)(2) and (c), 3485(a)-(b). The grievance process has two levels of review. Id. The process requires the inmate to submit a grievance in writing, within thirty days, to the Institutional Office of Grievances at the prison, reentry facility, or fire camp where they are housed. Id. The inmate must submit the grievance on a form 602, if available, or by other means provided by the institution. Id. If the inmate wishes to appeal the institutional decision, the inmate must appeal in writing, within thirty days, to the Office of Appeals. Id.

After June 2020, the inmate is still required to describe all information known and available regarding the claim, including key dates and times, names and titles of all involved staff (or descriptions of those staff members), and names and titles of all witnesses to the best of the claimant's knowledge. Cal. Code Regs. tit. 15, §§ 3482(c)(2), 3482(c)(4), 3482(d)(3), 3485(d)(2). Inmates must also include any and all supporting documents available. Id. The Office of Appeals receives, reviews, and maintains all non-medical inmate grievances at the final level of review. Generally, a final decision by the Office of Appeals exhausts an inmate grievance.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino v. Baca, 747 F.3d 1162, 1172-73 (9th Cir. 2014).

Plaintiff's Relevant Appeal

In appeal Log # 00000007475 (hereafter "appeal"), plaintiff identified the subject of his appeal as a violation of various sections of Title 15, as well as the Eighth and Fourteenth Amendments. (ECF No. 32-2 at 5; 33-1 at 4.) Plaintiff explained his issue as follows:

> Every inmate who is housed on E-Yard - Building 4 - Side B has lately been getting tested for the deadly infectious virus COVID-19 every week on Thursday, since the beginning of December, and the

> results of those tests have been received about approximately two days later. And should any of those tests come back positive, typically, the building staff would immediately remove those inmates from general population and have them placed into an area designated for isolation to quarantine. Well, on December 17, 2020, every inmate who was housed on E-yard -Building 4 - Side B was tested for COVID-19 as usual. But then two days later, on December 19, 2020, the building staff was informed that approximately 34 out of a population of 51 inmates had tested positive for COVID-19. While initially the staff here at CHCF attempted to remove all 34 of these inmates, they found out rather quickly that they were largely unprepared and unequipped to do so. When ironically they have an entire display of these state funded and costly tents on this particular yard to choose from. But, more importantly, their complete lack of preparation is reflective in the fact that they were only able to find isolated housing for 9 of the 34 inmates. None of which . . . was located inside the state funded and costly tents. So that left 25 of the 34 positive inmates with no other choice but to remain in the same housing with non-positive inmates, which resulted in them infecting the remaining non-positive inmates with the virus. So, what does your administration say about that?

(ECF No. 32-2 at 5, 7; 33-1 at 4-5.) As the action requested, plaintiff wrote:

> I formally request that I be released from CDCR custody immediately due to the fact that the real danger to my overall health and well being is being in CDCR custody, as proven by their actions. I also formally request that every ranking staff member from the institutions warden on to every associate warden, captain, lieutenant and sergeant on 1st, 2nd and 3rd watch who worked on E-facilities administration from December 19, 2020 to present be held accountable for the irreparable damage of their actions and/or inactions has caused during that time, by being demoted to a lower class and/or suspended without pay. (As described in Chp. 3 Personal Training and Employee Relations, Article 22 - Employee Discipline....) I also request that no reprisals and/or retaliation be taken against my person or property as a result of filing this appeal....

(ECF No. 32-2 at 5, 7; 33-1 at 4-5.) The appeal was signed by plaintiff on January 3, 2021. (Id.)

Appeal Response

The first level response identified the appeal as "Category: Facilities," and "Sub-Category: Adequacy of Environment." (ECF No. 32-2 at 10.) The reviewing official noted the CDCR's awareness of the risks that COVID-19 poses and set forth the steps taken to protect the inmates:

> Mandatory health screening before entering CDCR facilities. Additional deep cleaning efforts throughout the institution. Increased supply of disinfectants, soap, hand sanitizer, and personal protective equipment. The limitations and suspensions of inmate transfers and movements, quarantine protocols, cancelling visiting at

7

> CDCR facilities until further notice, and many other steps depending on your location. Moving and relocating effected and non-effected inmates in a safe manner without possibly effecting other areas of the institution. When inmates on Facility E including E4B have tested positive for COVID-19, CHCF has responded quickly by clustering the effected and non-effected within the institutions attempting to contain exposure.

(ECF No. 32-2 at 10.) In addition, the response set forth the criteria governing release of inmates who presented no risk of public safety under the emergent circumstances, but found that plaintiff did not meet the criteria, so his request for early release was denied. Plaintiff's request that staff be held accountable and receive training was denied as outside the scope of the grievance process. (ECF No. 32-2 at 11.) The appeal response granted plaintiff's request that no retaliation occur as a result of his appeal.

Discussion

The parties agree on the administrative appeal at issue, but they disagree as to whether plaintiff's allegations in the appeal were sufficient to put prison officials on notice of plaintiff's claims raised in this action. The undersigned is persuaded that the appeal provided prison officials with sufficient notice as to the nature of the wrong for which plaintiff seeks redress herein.

A grievance will suffice "if it alerts the prison to the nature of the wrong for which the redress is sought." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (superseded by statute on other grounds); see Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010). Additionally, "[t]he grievance 'need not include legal terminology or legal theories,' because 'the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.'" Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (quoting Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)). "The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he [or she] may be sued.'" Id. (quoting Jones, 549 U.S. at 219).

The administrative appeal provides more details as to what took place in plaintiff's housing unit on December 19, 2020, and demonstrates that prison staff were aware of the positive COVID-19 results because building staff removed nine of the infected inmates to isolated

8

quarters. The remainder of the inmates who tested positive were left housed among those who tested negative, resulting in everyone becoming infected with COVID-19. In addition, plaintiff identified the appeal issues as violations of the Eighth and Fourteenth Amendments.

Defendants contend that plaintiff's appeal only "complained generally about prison conditions and sought early release, and did not complain about specific conduct by particular staff." (ECF No. 34 at 1.) Defendants read plaintiff's appeal too narrowly. In his appeal, plaintiff stated that building staff initially removed 9 inmates who tested positive but failed to remove the remaining 25. (ECF No. 32-2 at 7.) Moreover, as plaintiff explained, he was unaware of the identities of defendants Moreno and Garcia at the time he filed his appeal. (ECF No. 33 at 7.) The undersigned finds that plaintiff's identification of CHCF building staff's actions and omissions in his appeal are sufficient to exhaust his claims against defendants Moreno and Garcia.[4] While plaintiff did not allege a "failure to protect" claim in his appeal, plaintiff provided a factual basis for such a claim in the appeal.

Defendants also contend plaintiff failed to identify an injury. However, the court finds that plaintiff identified his injury when he alleged that the failure to remove the 25 infected inmates "resulted in them infecting the remaining non-positive inmates with the virus." (ECF No. 32-2 at 7.) Such statement would include plaintiff. Moreover, to the extent plaintiff did not mention the effects of "long-COVID," plaintiff could not have included such claims as they did not arise until later.

For all of the above reasons, the undersigned recommends that the motion be denied.

////

////

---

[4] In addition, in his request for second level review, plaintiff stated that prison officials intentionally ignored safety measures, protocols and policies requiring the infected inmates to be removed and isolated. (ECF No. 32-2 at 12.) Plaintiff clarified that after being notified of the outbreak by medical staff, prison officials at CHCF failed to remove, isolate or quarantine those infected inmates, electing instead to leave them housed with the inmates who tested negative. (ECF No. 32-2 at 13.) Also, he alleged that prison officials eliminated all outdoor access and movement, forcing the uninfected inmates to remain in the hazardous environment, ignoring CDC recommendations and federal court-ordered guidelines. (Id.)

Leave to File Further Motion

Defendants also request that if the exhaustion motion is denied, defendants be permitted to file a subsequent summary judgment motion on the merits of plaintiff's claims. (ECF No. 32 at 1 n.1.) Defendants' request is granted. Once defendants file an answer, the court will issue a discovery and scheduling order that provides for the filing of pretrial motions by any party.

Conclusion

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

Further, IT IS RECOMMENDED that defendants' motion for summary judgment (ECF No. 32) be denied, and defendants be required to file a responsive pleading within twenty-one days.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 14, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/benn1340.msj.fte