1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JONATHAN BENNETT,                      No.  2:21-cv-1340 WBS KJN P

12                   Plaintiff,

13        v.                                FINDINGS AND RECOMMENDATIONS

14   BURTON, et al.,

15                   Defendants.

16

17        Plaintiff is a state prisoner, proceeding pro se, with a civil rights complaint pursuant to 42

18   U.S.C. § 1983.  Defendants' motion for judgment on the pleadings is before the court.  As

19   discussed below, the undersigned recommends that the motion be granted.

20   Plaintiff's Amended Complaint[1]

21        This action proceeds on plaintiff's amended complaint against defendants U. Garcia and

22   F. Moreno.  (ECF No. 43.)  Plaintiff is a California state prisoner housed at the California Health

23   Care Facility ("CHCF") in Stockton.  (ECF No. 43 at 2.)  Plaintiff alleges as follows.  On

24   December 19, 2020, plaintiff was confirmed to be negative for COVID-19 based on a test

25   administered on December 17, 2020.[2]  Inmate Conwell, housed with plaintiff at the time in an

26   _____

   [1]  Plaintiff's claims against Warden Burton were dismissed on January 18, 2023.  (ECF No. 50.)

27
   [2]  Plaintiff's Exhibit D-3 shows that the COVID-19 test was administered at 5:00 a.m. on
28   December 17, 2020, and the results were made available at 1:30 p.m. on December 19, 2020.

                                          1

open dorm setting, was also tested on December 17, 2020, and his December 19, 2020 results were positive for COVID-19.  (ECF No. 43 at 29-30.)  Previously when inmates in the dorm tested positive, they were removed from the dorm and separately housed in isolation.  (ECF No. 43 at 33.)  But on December 19, 2020, 34 of the 51 inmates housed in the dorm tested positive for COVID-19.  (Id. at 34.)  Staff were notified and informed of this situation on December 19, 2020. (Id.)  Despite notifying defendants of these circumstances, defendants failed to intervene to remedy the situation.  As a result, plaintiff was exposed to twice as many confirmed COVID-19 positive inmates in an open dorm setting and required to use the same shower and restroom facilities.  Plaintiff contracted COVID-19 and now suffers from "Post Acute COVID Syndrome," or "Long COVID," experiencing debilitating COVID-19 symptoms.  Defendants allegedly violated plaintiff's Eighth Amendment rights by allowing him to remain housed in an open dorm with inmates who tested positive for COVID-19, knowing that plaintiff was negative for COVID-19 at that time.  Plaintiff seeks money damages.

Legal Standard for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings may be granted when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law.  Chavez v United States, 683 F.3d 1102, 1108 (9th Cir. 2012).  The applicable standard is essentially identical to the standard for a motion to dismiss under Rule 12(b)(6).  United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011).  Thus, although the Court must accept well-pleaded facts as true, it is not required to accept mere conclusory allegations or conclusions of law.  See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A motion for judgment on the pleadings should be granted "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

////

_____

(ECF No. 43 at 24.)

2

1  The Parties' Arguments

2       Defendants U. Garcia and F. Moreno contend that plaintiff's allegations are vague, and

3  that plaintiff failed to plead facts advising defendants what, if anything, they did wrong.  Plaintiff

4  is required to allege facts showing either direct, personal participation of each defendant in the

5  alleged harm, or some sufficient causal connection between the defendant's conduct and the

6  alleged deprivation.  Defendants contend the amended complaint should be dismissed because it

7  does not demonstrate "how each [defendant] was personally responsible for the conditions in

8  plaintiff's housing unit."  Hill v. Diaz, 2022 WL 2046204 at *10 (C.D. Cal. Apr. 11, 2022).

9  Absent such facts, defendants argue that plaintiff fails to show each defendant caused the

10  violation, and therefore "fails to state a claim against any defendant."  Id.  The allegation that they

11  "allowed" plaintiff's housing fails to describe any particular conduct or action taken by each

12  defendant.  Simply stating each defendant's rank is insufficient to demonstrate liability.

13       Similarly, plaintiff includes no facts demonstrating that each defendant acted with

14  deliberate indifference, as required under the Eighth Amendment.  Based on the absence of facts

15  as to each named defendant, plaintiff fails to demonstrate that each defendant knew of yet

16  intentionally disregarded a serious risk to plaintiff's health or safety.  While COVID-19 is a

17  serious health issue, plaintiff alleges no facts demonstrating that the conduct of defendants on

18  December 19, 2020, was more likely than other factors to be the cause of plaintiff contracting the

19  virus.  Because it is likely that all of the inmates in the dorm were tested on December 17, along

20  with plaintiff and inmate Conwell, it appears that plaintiff was housed with all of these inmates

21  for about two and a half days before the test results revealed the positive results.

22       Further, plaintiff alleges no facts suggesting the other inmates' positive COVID status

23  only began when tested on December 17.  Plaintiff concedes that prior tests were administered on

24  December 10.  (ECF No. 43 at 22.)  Thus, the 34 inmates who tested positive on December 19

25  had to have contracted the virus at some point in the preceding seven days, but plaintiff could not

26  allege any fact as to exactly when those 34 inmates became COVID-19 positive.  Similarly, while

27  plaintiff appears to contend he contracted the virus after December 19, there is no definitive way

28  to know exactly when plaintiff contracted the virus but given that he was housed with 34 inmates

1    who were positive for the 2.5 days before the test results were known, it is just as likely that

2    plaintiff contracted the virus before defendants became aware of the positive test results.  Such

3    vague time lines and causal connections are insufficient to state a claim.  Also, defendants'

4    alleged misconduct in  "allowing" plaintiff to remain housed with other inmates after they had

5    already been positive for at least 2.5 days, and possibly as many as 9.5 days, does not rise to the

6    level of deliberate indifference.

7           In addition, defendants contend qualified immunity bars plaintiff's claim for damages,

8    arguing that because plaintiff failed to establish defendants' actions were deliberately indifferent

9    or caused plaintiff's injury, they are entitled to qualified immunity under the first prong.  Saucier

10   v. Katz, 533 U.S. 194, 201 (2001) (the alleged facts must show a violation of a federal statutory

11   or constitutional right).  As to the second prong, that the right in question was clearly established

12   at the time defendants acted, id., defendants contend there is no current authority establishing that

13   a reasonable correctional officer could have acted to prevent transmission of COVID-19 given the

14   substantial exposure plaintiff had already experienced.

15          Plaintiff's Position

16          Plaintiff opposes the motion on the grounds that he is only required to set forth a short and

17   plain statement of facts, alleging only that a constitutional violation occurred and that it was

18   committed by someone acting under color of state law, which is what he did.  (ECF No. 56 at 5.)

19   Plaintiff asserts that he was not afforded the opportunity to expound on the required nexus

20   between defendants and the alleged facts because of "defendants' dilatory tactics and/or bad faith

21   practices" to prevent plaintiff from using discovery to establish such nexus, pointing to their

22   motion to stay discovery.  (ECF No. 56 at 6.)

23          In terms of deliberate indifference, plaintiff highlights Judge Tigar's order requiring the

24   CDCR to set aside isolation and quarantine bed space at every prison in response to the

25   widespread COVID-19 outbreak at San Quentin resulting in 1437 active cases and 19+ deaths.

26   (ECF No. 56 at 10.)  Plaintiff argues that each and every prison official in California was put on

27   notice of the high risk COVID-19 posed to inmates, and tents were placed at facilities to help

28   with increased housing needs.  Further, this demonstrates why discovery is important -- to

                                                    4

1    illuminate the role of each defendant and his participation and connection to the alleged

2    violations.  Without such discovery plaintiff is at a disadvantage.  (ECF No. 56 at 13.)

3         Defendants' Reply

4         Defendants counter that plaintiff's argument that he need only allege that a constitutional

5    violation occurred and that it was committed by someone acting under color of state law

6    oversimplifies the pleading requirement.  (ECF No. 58 at 2.)  Plaintiff must provide facts

7    plausibly demonstrating that he states a specific legal claim, and that liability attaches to the

8    named defendants.  (ECF No. 58 at 2) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

9    (2007); Ashcroft, 556 U.S. at 678.)  Plaintiff's vague claim that defendants "allowed" plaintiff to

10   be housed with inmates infected with the virus is insufficient to explain what each defendant did

11   or did not do, what his role was, as well as the circumstances in which his action or omission took

12   place.  (ECF No. 58 at 2.)

13        Second, plaintiff's listing of legal authorities defining deliberate indifference and what is

14   required to prove it fails to provide factual support as to how each of the named defendants were

15   allegedly deliberately indifferent and fails to put defendants on notice of what each did wrong.

16        Third, plaintiff failed to address defendants' argument that it is speculation that plaintiff

17   contracted COVID-19 as a result of the defendants' actions or inactions.  Because for at least 2.5

18   days plaintiff had already been housed with 34 inmates who eventually tested positive, plaintiff's

19   contention that he contracted the virus only after December 19 is mere speculation for which the

20   amended complaint contains no factual basis.

21        Finally, defendants argue that plaintiff concedes defendants are entitled to qualified

22   immunity because plaintiff failed to address the issue.

23   Eighth Amendment Standards

24        Prison conditions violate the Eighth Amendment if they are incompatible with "the

25   evolving standards of decency that mark the progress of a maturing society."  Rhodes v.

26   Chapman, 452 U.S. 337, 346 (1981).  Prison officials may not deprive prisoners of the "minimal

27   civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal

28   quotations and citations omitted).  The Eighth Amendment "requires that inmates be furnished

5

with the basic human needs, one of which is reasonable safety." Helling v. McKinney, 509 U.S. 25, 33 (1993) (citation and internal quotations omitted).  In a "failure-to-protect" claim, a prisoner must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was subjectively, deliberately indifferent to inmate's health or safety.  Farmer, 511 U.S. at 834; Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

In order to state an Eighth Amendment claim, a plaintiff must allege that prison officials' conduct was sufficiently harmful (the "objective" test), and that the officials acted with a sufficiently culpable state of mind (the "subjective" test).  See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), cert. denied, 532 U.S. 1065 (2001).  The objective test looks to whether the deprivation was sufficiently serious, as determined by the conditions alleged.  See Farmer, 511 U.S. at 834.  The plaintiff must allege conditions so serious as to be outside the bounds of those which "today's society chooses to tolerate."  Helling, 509 U.S. at 36.

The subjective test requires "more than ordinary lack of due care for the prisoner's interest or safety."  Farmer, 511 U.S. at 835 (quotation omitted).  "[D]eliberate indifference" is the minimum showing of culpability necessary to state a claim.  See id. at 834; Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To be liable for "deliberate indifference," a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  Id. at 838.  A prison official may be liable for an Eighth Amendment violation if the plaintiff plausibly alleges that such official, acting with "deliberate indifference," caused actionable harm.  See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc) (distinguishing Eighth Amendment and Fourteenth Amendment deliberate indifference standards); Ashcroft, 556 U.S. at 678.

Prison officials have a constitutional obligation to protect inmates from serious communicable diseases.  See Helling, 509 U.S. at 33; Fuller v. Houston, 2021 WL 6496742, at *3

6

1  (C.D. Cal. Nov. 19, 2021), <u>report and recommendations adopted</u>, 2022 WL 225671 (C.D. Cal.

2  Jan. 25, 2022); <u>Maney v. Brown</u>, 516 F. Supp. 3d 1161, 1179 (D. Or. 2021) (collecting cases

3  recognizing prison officials' duty to protect inmates from exposure to communicable diseases

4  under the Eighth Amendment).

5         As to the risks posed by COVID-19, "no one questions that [COVID-19] poses a

6  substantial risk of serious harm to [prisoners]." <u>Plata v. Newsom</u>, 445 F. Supp. 3d 557, 559 (N.D.

7  Cal. 2020); <u>see also</u> <u>Martinez v. Sherman</u>, 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022) ("It

8  is clear that COVID-19 poses a substantial risk of serious harm.") (citations omitted); <u>Fuller</u>,

9  2021 WL 6496742, at *4 ("There is absolutely no question that COVID-19 is a serious

10  communicable disease.") (citations omitted).

11         In examining whether a prison official subjectively acted with deliberate indifference to

12  the risk of COVID-19, the key inquiry is not whether the official responded perfectly, complied

13  with every CDC guideline, or completely averted the risk; instead, the key inquiry is whether the

14  official "responded reasonably to the risk." <u>Benitez v. Sierra Conservation Ctr., Warden</u>, 2021

15  WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021); <u>see also</u> <u>Plata</u>, 445 F. Supp. 3d at 564 ("The

16  question is whether [p]laintiffs have demonstrated that [d]efendants' response to the COVID-19

17  epidemic is unreasonable."). A prison official responds reasonably to the risk when he has "not

18  disregarded a known risk or failed to take any steps to address the risk," even if the prison's

19  response has been inadequate. <u>Benitez</u>, 2021 WL 4077960, at *6.

20         To state a claim under 42 U.S.C. § 1983, plaintiff must allege, among other things, a

21  causal link between the defendants' action or inaction and his alleged constitutional harm. The

22  requisite causal connection can be established when a person (1) "does an affirmative act,

23  participates in another's affirmative acts, or omits to perform an act which he is legally required

24  to do that causes the deprivation;" or (2) "set[s] in motion a series of acts by others which the

25  actor knows or reasonably should know would cause others to inflict the constitutional injury."

26  <u>Lacey v. Maricopa Cnty.</u>, 693 F.3d 896, 915 (9th Cir. 2012) (<u>en banc</u>) (internal citation omitted).

27  Allegations regarding causation must be individualized and must focus on the duties and

28  responsibilities of the defendant "whose acts or omissions are alleged to have caused a

1  constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations

2  omitted).

3  Discussion

4        The undersigned is persuaded that the amended complaint is devoid of specific facts

5  identifying what each defendant did or did not do that demonstrates that each was deliberately

6  indifferent to a substantial risk of harm to plaintiff or was responsible for plaintiff's injuries.  It is

7  public knowledge that COVID-19 poses a substantial risk of harm.  But here, plaintiff alleges

8  only that defendants "allowed" plaintiff to remain in the housing unit after learning 34 inmates

9  tested positive.  He includes no specific facts demonstrating that each was responsible for housing

10  decisions, either to retain plaintiff in the dorm or not to move plaintiff from the dorm, or that each

11  had the ability to alter plaintiff's housing.  Plaintiff provides no facts showing that each defendant

12  was deliberately indifferent.

13        Further, as argued by defendants, there are no specific facts making the required causal

14  connection between the acts or omissions of defendants and plaintiff's contraction of COVID-19.

15  The question is whether plaintiff's asserted injury is "fairly traceable" to each defendant's

16  conduct.  Ecological Rights Foundation v. Pacific Lumber Co., 230 F.3d 1141, 1152 (9th Cir.

17  2000).  In other words, "whether the alleged injury can be traced to the defendant's challenged

18  conduct, rather than to that of some other actor not before the court."  Id. (citation omitted).  A

19  causal connection "cannot be too speculative, or rely on conjecture about the behavior of other

20  parties, but need not be so airtight at this stage . . . as to demonstrate plaintiff[ ] would succeed on

21  the merits."  Id.

22        Here, plaintiff includes no facts as to each defendant's duties and responsibilities in

23  connection with the alleged constitutional deprivation.  Leer, 844 F.2d at 633.  Thus, it is not

24  clear they were responsible for plaintiff's housing, or whether someone else, not named as a

25  defendant, was responsible.

26        Further, plaintiff's amended complaint demonstrates that there was a two and a half day

27  gap between the administration of the COVID-19 test and December 19, 2020, the date the results

28  were available.  Thus, at a minimum, plaintiff was already exposed to COVID-19 during this two

8

1   and a half day period when no one knew 34 inmates had contracted the virus.  Plaintiff includes

2   no facts showing that had he been immediately removed from the dorm it is likely he would not

3   have contracted the virus.

4        Plaintiff appended the policy for quarantine of patients who have been exposed to

5   COVID-19, highlighting "[e]xposed persons shall not be housed in dorms with those who are not

6   known to be exposed."  (ECF No. 43 at 18.)  However, by December 19, 2020, apparently

7   unbeknownst to prison staff, the 17 inmates housed in plaintiff's dorm had already been exposed

8   to the 34 inmates who were provided positive test results the afternoon of December 19, 2020,

9   based on COVID-19 tests administered on December 17, 2020.  In addition, because the prior test

10  was administered on December 11, 2020 (ECF No. 43 at 33), and it is possible that some of those

11  34 inmates had contracted COVID-19 sometime after December 11, 2020, plaintiff's exposure

12  could have been longer than 2.5 days.  In any event, because 34 of the inmates had contracted

13  COVID-19 by December 19, 2020, plaintiff had already been exposed.  Therefore, actions or

14  omissions that took place after December 19, 2020 could not be based on an allegation that

15  plaintiff was wrongfully housed with inmates who tested positive for COVID-19 when he tested

16  negative on December 19, because he had been housed with such inmates since December 11,

17  2020.  Moreover, he cannot allege, with a degree of certitude, what day he contracted COVID-19.

18  Because plaintiff had already been exposed to COVID-19, any failure of either defendant to

19  transfer plaintiff after December 19, 2020, would not have certainly prevented him from

20  contracting the virus.

21       Plaintiff's amended complaint also demonstrates that prison officials at CSP-SAC were

22  taking steps to protect the inmate population from COVID-19.  It appears they were testing

23  inmates on a weekly basis and, initially, would move an inmate who tested positive.  Here,

24  however, a large number of inmates tested positive and by the time the results were known, it is

25  likely the uninfected inmates had been exposed to the virus.  Thus, it is unclear at this juncture

26  what reasonable steps could or should be taken; plaintiff contends he should have been moved,

27  but should all 17 of the inmates who did not receive positive results have been moved?  Or was it

28  reasonable to permit such inmates to remain in the dorm given their obvious exposure?  Such

1   unanswered questions suggest that any failure to act after December 19, 2020, constitutes

2   negligence, not deliberate indifference, particularly absent facts not pled in the amended

3   complaint or provided in plaintiff's opposition and given the contemporary uncertainty regarding

4   not only the nature of the virus but also the efficacy of various containment or mitigation

5   strategies.  See Hope v. Warden York Cty. Prison, 972 F.3d 310, 330 (3d Cir. 2020) ("Although

6   the District Court criticized the Government for the lack of 'effective containment measures,' and

7   for not doing 'nearly enough' to combat COVID-19, those critiques are not tantamount to

8   establishing the Government's deliberate indifference.") (citation omitted); Wilson v. Williams,

9   961 F.3d 829, 841 (6th Cir. 2020) (Bureau of Prisons' early efforts to curtail the spread of

10  COVID-19 demonstrated "the opposite of a disregard of a serious health risk"); Dawson v. Asher,

11  2020 WL 1704324, at *12 (W.D. Wash. Apr. 8, 2020) ("No one can entirely guarantee safety in

12  the midst of a global pandemic.").

13          As to plaintiff's objection that a short and plain statement of allegations is proper, while

14  detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of

15  action, supported by mere conclusory statements, do not suffice."  Ashcroft, 556 U.S. at 678

16  (citing Bell Atlantic Corp., 550 U.S. at 555).  Plaintiff must set forth "sufficient factual matter,

17  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft, 556 U.S. at 678

18  (quoting Bell Atlantic Corp., 550 U.S. at 570).

19
20
21              A claim has facial plausibility when the plaintiff pleads factual
            content that allows the court to draw the reasonable inference that the
            defendant is liable for the misconduct alleged. The plausibility
            standard is not akin to a "probability requirement," but it asks for
            more than a sheer possibility that a defendant has acted unlawfully.
22              Where a complaint pleads facts that are merely consistent with a
            defendant's liability, it stops short of the line between possibility and
            plausibility of entitlement to relief.
23

24  Ashcroft, 556 U.S. at 678 (citations and quotation marks omitted).  Although legal conclusions

25  can provide the framework of a complaint, they must be supported by facts, and are not entitled to

26  the assumption of truth.  Id. at 1950.  Here, plaintiff failed to provide specific facts demonstrating

27  either defendant was deliberately indifferent to or responsible for plaintiff's injuries.

28  ////

10

Plaintiff also argues that discovery is necessary to "illuminate the role each defendant played in [his] claim."  (ECF No. 56 at `1.)

"District courts need not condone the use of discovery to engage in 'fishing expedition[s].'"  Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) (quoting Exxon Corp. v. Crosby-Miss. Ress., Ltd., 40 F.3d 1474, 1487 (5th Cir.1995)).  "[F]air notice pleading under Rule 8 is not intended to give parties free license to engage in unfounded fishing expeditions on matters for which they bear the burden of proof at trial."  Perez v. Gordon & Wong Law Grp., P.C., 2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012).  Thus, "litigants are not permitted to 'unlock the doors of discovery . . . armed with nothing more than conclusions; [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Riley v. Modesto Irrigation Dist., 2011 WL 5828195, at *3 (E.D. Cal. Nov. 18, 2011) (citing Bell Atlantic Corp.,  550 U.S. at 555) (internal citations omitted). Here, plaintiff's allegation that defendants "allowed" plaintiff to remain in the dorm is a mere conclusion rather than providing specific facts explaining their roles and what they did or did not do.  Thus, plaintiff has not pleaded enough to warrant discovery, as the amended complaint lacks more than just a "missing link."

It is true that discovery helps litigants adduce evidence in support of their claims.  But at the pleading stage, plaintiff is required to allege specific facts that establish liability of each individual named as a defendant.  Ashcroft, 556 U.S. at 678.  Here, plaintiff identifies the defendants as a sergeant and a lieutenant, but such labels offer no insight to their roles, actions, or inactions, if any, related to plaintiff's housing on or after December 19, 2020.  The undersigned is persuaded that plaintiff's sole allegation -- by "allowing" plaintiff to remain in the dorm -- is too general and vague to ascribe personal liability to each defendant.  The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short.  Ashcroft, 556 U.S. at 678 (internal quotation marks & citation omitted).

Finally, litigants, including pro se litigants, are charged with conducting reasonable inquiry prior to bringing their claims to federal court:

11

1

2

3

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

4

5

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

6

7

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

8

9

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

10

11

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

12  Fed. R. Civ. P. 11(b).  By signing an amended complaint, plaintiff certifies he made reasonable

13  inquiry and has evidentiary support for his allegations, and for violation of this rule the court may

14  impose sanctions sufficient to deter repetition by plaintiff or others.  Fed. R. Civ. P. 11.

15      In conclusion, taking plaintiff's allegations as true, that Lt. Garcia and Sgt. Moreno

16  "allowed" plaintiff to remain housed in a dorm setting with 34 inmates who were positive for

17  COVID-19 on December 19, 2020, and plaintiff tested negative on December 19, 2020, such

18  allegations are insufficient to demonstrate each defendant's individual participation in plaintiff's

19  housing, their deliberate indifference, or a causal connection between each of their specific

20  actions or omissions and plaintiff contracting COVID-19.

21  Qualified Immunity

22      The defense of qualified immunity protects government officials from liability for civil

23  damages as long as their conduct does not violate clearly established constitutional or statutory

24  rights of which a reasonable official would have known.  Pearson v. Callahan, 555 U.S. 223, 231

25  (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The protection of qualified immunity

26  applies regardless of whether the government official's error is a mistake of law, a mistake of

27  fact, or a mistake based on mixed questions of law and fact."  Pearson, 555 U.S. at 231 (citation

28  and internal quotations omitted).

1    In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court established a two-step

2    sequence for determining qualified immunity claims. The initial inquiry is whether, taken in the

3    light most favorable to the party asserting the injury, the facts alleged show the officer's conduct

4    were the allegations established, there is no necessity for further inquiries concerning qualified

5    immunity.  On the other hand, if a violation could be made out on a favorable view of the parties'

6    submissions, the next sequential step is to ask whether the right was clearly established."  <u>Id.</u>

7    Courts may exercise their "sound discretion" in deciding which of the two steps to address first,

8    "in light of the circumstances in the particular case at hand."  <u>Pearson</u>, 555 U.S. at 236.

9    At least one district court has stated that "the law is clearly established that individuals in

10   government custody have a constitutional right to be protected against a heightened exposure to

11   serious, easily communicable diseases," and found that such "clearly established right extends to

12   protection from COVID-19."  <u>Jones v. Sherman</u>, 2022 WL 783452, at *10 (E.D. Cal. Mar. 11,

13   2022), <u>report and recommendation adopted</u>, 2022 WL 4238875 (E.D. Cal. Sept. 14, 2022).  The

14   undersigned finds such reasoning persuasive.

15   That said, because plaintiff fails to provide adequate facts concerning the involvement of

16   defendants, the court is unable to evaluate the second prong of qualified immunity at this time and

17   declines to do so.  Defendants' request is denied without prejudice.

18   <u>Leave to Amend</u>

19   Federal Rule of Civil Procedure 15 provides that leave to amend should be freely given

20   "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Court may not dismiss a complaint

21   without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could

22   not be cured by amendment."  <u>Akhtar v. Mesa</u>, 698 F.3d at 1212 (citation omitted); <u>see also</u>

23   <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (<u>en banc</u>) (district court should grant leave

24   to amend "unless it determines that the pleading could not possibly be cured by the allegation of

25   other facts") (citation and internal quotations omitted).

26   Plaintiff has been provided one opportunity to amend his complaint.  However, it appears

27   that plaintiff misunderstood his pleading obligations under Rule 8 and <u>Ashcroft</u>.  Moreover, while

28   it appears unlikely plaintiff can amend to state a claim concerning his continued housing after

13

1   December 19, 2020, it is not absolutely clear, particularly given plaintiff's failure to provide

2   specific facts.  In addition, some of the interrogatories and requests for admissions propounded to

3   defendants suggest that plaintiff is aware of facts that might meet the pleading standard, at least

4   with regard to his claims of deliberate indifference.  (See, e.g., ECF No. 60 at 43-44, 70, 72.)

5   Thus, the undersigned recommends that, in an abundance of caution, plaintiff be granted one final

6   opportunity to amend.

7   Conclusion

8         Accordingly, IT IS HEREBY RECOMMENDED that:

9         1.  Defendants' motion for judgment on the pleadings (ECF No. 52) be granted;

10        2.  Plaintiff's amended complaint be dismissed; and

11        3.  Plaintiff be granted thirty days to file a second amended complaint.

12        These findings and recommendations are submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14   after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

17   objections shall be filed and served within fourteen days after service of the objections.  The

18   parties are advised that failure to file objections within the specified time may waive the right to

19   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20   Dated:  April 18, 2023

21

22                                    KENDALL J. NEWMAN
                                      UNITED STATES MAGISTRATE JUDGE
23

24   /benn1340.jop

25

26

27

28

                                          14