UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BENNETT,<br><br>        Plaintiff,<br><br>    v.<br><br>BURTON, et al.,<br><br>        Defendants. | No. 2:21-cv-1340 WBS KJN P<br><br><br>ORDER |

      Plaintiff is a state prisoner, proceeding pro se, with a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff's second amended complaint is before the court. As discussed below, plaintiff has stated potentially cognizable Eighth Amendment claims as to defendants Garcia and Moreno, and such defendants are directed to file a responsive pleading within thirty days.

<u>Background</u>

      On April 18, 2023, it was recommended that defendants' motion for judgment on the pleadings be granted, and plaintiff be granted 30 days to file a second amended complaint. (ECF No. 64.) On May 17, 2023, plaintiff filed a second amended complaint. (ECF No. 67.) On May 22, 2023, defendants filed a request for screening order. (ECF No. 68.)

      On June 29, 2023, the district court adopted the findings and recommendations in full and granted plaintiff 30 days to file a second amended complaint. (ECF No. 69.) On July 28, 2023,

////

plaintiff filed another second amended complaint. (ECF No. 70.) On August 4, 2023, defendants renewed their request that the court screen plaintiff's amended pleading. (ECF No. 71.)

Operative Pleading

The May 17, 2023 second amended complaint was filed prematurely because the district court had not yet ruled on the pending recommendations. Moreover, the later filed second amended complaint differs. Therefore, the court strikes the May 17, 2023 second amended complaint, and denies defendants' May 22, 2023 request as moot.

The undersigned finds that plaintiff's July 28, 2023 second amended complaint is the operative pleading and grants defendants' request that the court screen the pleading.

Plaintiff's Second Amended Complaint

This action proceeds on plaintiff's second amended complaint against defendants U. Garcia and F. Moreno. (ECF No. 70.) Plaintiff is a California state prisoner housed at the California Health Care Facility ("CHCF") in Stockton. Plaintiff alleges as follows. On December 19, 2020, plaintiff was confirmed to be negative for COVID-19 based on a test administered on December 17, 2020.[1] Inmate Conwell, housed with plaintiff at the time in an open dorm setting, was also tested on December 17, 2020, and his December 19, 2020 results were positive for COVID-19. (ECF No. 70 at 56-59.) Previously when inmates in the dorm tested positive, they were removed from the dorm and separately housed in isolation, and plaintiff alleges there were tents available for such housing. But on December 19, 2020, 34 of the 51 inmates housed in the dorm tested positive for COVID-19. The third watch housing unit officer informed the entire dorm population that they would not be removing any of the COVID-19 positive inmates to the designated area for isolation. (ECF No. 70 at 7.) Plaintiff asked to speak to the two defendants, and the third watch housing unit officer called defendants who came and spoke with plaintiff. Plaintiff asked each of the defendants why they were intentionally

---

[1] Plaintiff's exhibit shows that his negative COVID-19 test was administered at 5:00 a.m. on December 17, 2020, and results were made available at 1:24 p.m. on December 19, 2020. (ECF No. 70 at 52.) On December 24, 2020, plaintiff was tested again, and on December 26, 2020, at 11:51 p.m., plaintiff was reported as testing positive for COVID-19 and presumed to be contagious. (ECF No. 70 at 54.)

disregarding a known risk to plaintiff's safety, and notes there were statewide guidelines in place for the isolation of COVID-19 positive inmates.  Plaintiff contends neither defendant could provide a legitimate penological purpose for their actions.  The defendants left without removing any of the COVID-19 positive inmates to isolation.  Plaintiff contends that defendants' deliberate disregard for various containment and mitigation strategies to prevent further widespread transmission of COVID-19 put plaintiff at substantial risk of harm because he was forced to remain housed with COVID-19 positive prisoners and, as a result, plaintiff contracted the virus, and now suffers from long-COVID. (ECF No. 70 at 11-12.)  Plaintiff argues that defendants "dropped the ball," and since both defendants were working overtime, "simply did not want to deal with the complexities of having to find alternative housing for 34 inmates. (ECF No. 70 at 13.)

Plaintiff contends that the guidelines for an "exposed" inmate is totally different from those covering an inmate who tested positive for COVID-19.  For example, all known exposed inmates are only to be isolated with other known exposed inmates and all inmates confirmed positive are only to be isolated with other confirmed positive inmates.  (ECF No. 70 at 14.)  Therefore, whether or not plaintiff was inadvertently exposed to COVID-19 positive inmates for any length of time, per the interim guidance on isolation and quarantine, once defendants were informed of the positive test results, the positive COVID-19 inmates should have been removed to isolation, and plaintiff should not have been isolated with confirmed positive inmates.

At the time of this incident, each defendant was notified by plaintiff and the third watch housing unit officer by phone about the COVID-19 outbreak and that plaintiff had tested negative. (ECF No. 70 at 17.)  Yet neither defendant took steps to address the risk of harm to plaintiff despite each defendant being responsible for E-Facility and charged with protecting and ensuring the health and welfare of all inmates in their assigned area of the facility.  (ECF No. 70 at 18.)  In addition, each defendant had the authority and ability to alter or remove plaintiff from his housing as described in their post orders.  Both defendants failed to take any reasonable measures to abate or avert the substantial risk of harm posed by COVID-19.  Defendants were deliberately indifferent to plaintiff's health and safety because they knew of yet intentionally

disregarded the known serious risk of harm by not removing the COVID-19 positive inmates. Instead, defendants chose to leave the COVID-19 positive inmates in the same dorm with inmates known to have tested negative despite having alternative housing available. (ECF No. 70 at 19.) Defendants also disregarded statewide COVID-19 safety protocols and intentionally disregarded various containment and mitigation strategies put in place to prevent further widespread transmission of COVID-19. This led directly to plaintiff contracting COVID-19 and now suffers from long COVID-19. (ECF No. 70 at 20.) Plaintiff adds that any reasonable prison official would have simply complied with the guidelines and removed the COVID-19 positive inmates to isolation. (ECF No. 70 at 29.)

Plaintiff seeks money damages.

Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 93 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

Eighth Amendment Standards

Prison conditions violate the Eighth Amendment if they are incompatible with "the evolving standards of decency that mark the progress of a maturing society." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Prison officials may not deprive prisoners of the "minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted). The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is reasonable safety." Helling v. McKinney, 509 U.S. 25, 33 (1993) (citation and internal quotations omitted). In a "failure-to-protect" claim, a prisoner must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was subjectively, deliberately indifferent to inmate's health or safety. Farmer, 511 U.S. at 834; Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

In order to state an Eighth Amendment claim, a plaintiff must allege that prison officials' conduct was sufficiently harmful (the "objective" test), and that the officials acted with a sufficiently culpable state of mind (the "subjective" test). See Wilson v. Seiter, 501 U.S. 294,

298 (1991); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), cert. denied, 532 U.S. 1065 (2001).  The objective test looks to whether the deprivation was sufficiently serious, as determined by the conditions alleged.  See Farmer, 511 U.S. at 834.  The plaintiff must allege conditions so serious as to be outside the bounds of those which "today's society chooses to tolerate."  Helling, 509 U.S. at 36.

The subjective test requires "more than ordinary lack of due care for the prisoner's interest or safety."  Farmer, 511 U.S. at 835 (quotation omitted).  "[D]eliberate indifference" is the minimum showing of culpability necessary to state a claim.  See id. at 834; Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To be liable for "deliberate indifference," a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  Id. at 838.  A prison official may be liable for an Eighth Amendment violation if the plaintiff plausibly alleges that such official, acting with "deliberate indifference," caused actionable harm.  See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc) (distinguishing Eighth Amendment and Fourteenth Amendment deliberate indifference standards); Ashcroft, 556 U.S. at 678.

Prison officials have a constitutional obligation to protect inmates from serious communicable diseases.  See Helling, 509 U.S. at 33; Fuller v. Houston, 2021 WL 6496742, at *3 (C.D. Cal. Nov. 19, 2021), report and recommendations adopted, 2022 WL 225671 (C.D. Cal. Jan. 25, 2022); Maney v. Brown, 516 F. Supp. 3d 1161, 1179 (D. Or. 2021) (collecting cases recognizing prison officials' duty to protect inmates from exposure to communicable diseases under the Eighth Amendment).

Discussion

As to the risks posed by COVID-19, "no one questions that [COVID-19] poses a substantial risk of serious harm to [prisoners]."  Plata v. Newsom, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020); see also Martinez v. Sherman, 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022) ("It

6

is clear that COVID-19 poses a substantial risk of serious harm.") (citations omitted); Fuller, 2021 WL 6496742, at *4 ("There is absolutely no question that COVID-19 is a serious communicable disease.") (citations omitted).

Plaintiff has now rectified his failure to identity what defendants Garcia and Moreno did or did not do that violated plaintiff's Eighth Amendment rights:  despite their awareness of the risks COVID-19 posed, and being directly informed plaintiff had tested negative, defendants intentionally failed to remove inmates who tested positive for COVID, despite having authority to do so, leaving plaintiff in a dorm setting with such infected inmates and thereby subjecting him to a heightened exposure to COVID-19; defendants did nothing to mitigate such risks.  Jones v. Sherman, 2022 WL 4238875 (E.D. Cal. Sept. 14, 2022).  In Jones, the Court found:

> a prisoner states a cognizable Eighth Amendment conditions of confinement claim if the prisoner can sufficiently allege that a defendant knew of the risks of COVID-19 and had authority to mitigate the risks, yet did nothing to mitigate those risks. The Court also finds that the law is clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and that this this clearly established right extends to protection from COVID-19.

Jones, 2022 WL 4238875  at *10.  While defendants may be able to present evidence to the contrary at summary judgment, plaintiff alleged sufficient facts to state a potentially cognizable Eighth Amendment claim.  Defendants shall file a responsive pleading within thirty days from the date of this order.

Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's May 17, 2023 second amended complaint (ECF No. 67) is stricken;

2. Defendants' May 22, 2023 request (ECF No. 68) is denied as moot;

3. Plaintiff's July 28, 2023 second amended complaint (ECF No. 70) is the operative pleading herein;

4. Defendants' request (ECF No. 71) is granted; and

////

////

5. Defendants shall file a responsive pleading within thirty days from the date of this order.

Dated: October 3, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/benn1340.1