1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JONATHAN BENNETT,                          No.  2:21-cv-1340 WBS KJN P

12                    Plaintiff,

13             v.                                FINDINGS & RECOMMENDATIONS

14    BURTON, et al.,

15                    Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18    action under 42 U.S.C. § 1983.  Defendants' fully briefed motion to dismiss is before the court.

19    As discussed below, it is recommended that the motion be denied.

20    Background

21          On June 29, 2023, the motion for judgment on the pleadings filed by defendants U. Garcia

22    and F. Moreno was granted, and plaintiff was granted leave to file a second amended complaint.

23    (ECF Nos. 64, 69.)  On July 28, 2023, plaintiff filed a second amended complaint.  (ECF No. 70.)

24          On November 2, 2023, defendants filed a motion to dismiss.  (ECF No. 73.)  Plaintiff

25    failed to file an opposition and was granted an additional thirty days to do so.  (ECF No. 74.)  On

26    December 18, 2023, plaintiff filed an opposition, and on December 27, 2023, defendants filed a

27    reply.  (ECF Nos. 75, 76.)

28    ////

1    Motion to Dismiss

2         Legal Standards Governing Motion to Dismiss

3         Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

4    "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

5    considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

6    must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

7    (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

8    McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

9    1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

10   than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

11   cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

12   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

13   statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

14   upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

15   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

16   draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

17   U.S. at 678.

18        "As a general rule, 'a district court may not consider any material beyond the pleadings in

19   ruling on a Rule 12(b)(6) motion.'"  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.

20   2001) (quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994)).  Otherwise, the motion is

21   treated as one for summary judgment.  Id.  There are exceptions for material which is properly

22   submitted as part of the complaint and "matters of public record" which may be judicially

23   noticed.  Id. at 688-89.  "If the documents are not physically attached to the complaint, they may

24   be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint

25   necessarily relies' on them."  Id. at 688 (quoting Parrino v. FHD, Inc., 146 F.3d 699, 705-06 (9th

26   Cir. 1998).

27        A motion to dismiss for failure to state a claim should not be granted unless it appears

28   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

2

1    entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se

2    pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

3    404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz

4    v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

5    interpretation of a pro se complaint may not supply essential elements of the claim that were not

6    pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

7           The Civil Rights Act

8           To state a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a federal

9    constitutional or statutory right; and (2) that the violation was committed by a person acting under

10   the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d

11   930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the

12   facts establish the defendant's personal involvement in the constitutional deprivation or a causal

13   connection between the defendant's wrongful conduct and the alleged constitutional deprivation.

14   See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44

15   (9th Cir. 1978).  "The requisite causal connection may be established when an official sets in

16   motion a 'series of acts by others which the actor knows or reasonably should know would cause

17   others to inflict' constitutional harms."  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d

18   1175, 1183 (9th Cir. 2007) (quoting Johnson, 588 F.2d at 743).  This standard of causation

19   "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l

20   Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles,

21   533 F.3d 1010, 1026 (9th Cir. 2008).

22          Plaintiff's Second Amended Complaint

23          This action proceeds on plaintiff's second amended complaint against defendants U.

24   Garcia and F. Moreno.  (ECF No. 70.)  Plaintiff is a California state prisoner housed at the

25   California Health Care Facility ("CHCF") in Stockton.  Plaintiff alleges as follows.

26   ////

27   ////

28   ////

                                              3

1         On December 19, 2020, plaintiff was confirmed to be negative for COVID-19 based on a

2   test administered on December 17, 2020.[1]  Inmate Conwell, housed with plaintiff at the time in an

3   open dorm setting, was also tested on December 17, 2020, and his December 19, 2020, results

4   were positive for COVID-19.  (ECF No. 70 at 56-59.)  Indeed, on December 19, 2020, 34 inmates

5   housed in the dorm tested positive for COVID-19.  (ECF No. 5, 13.)  Plaintiff previously alleged

6   that the dorm housed 51 inmates (ECF No. 43 at 34) and confirms the 51 population in his

7   opposition (ECF No. 75 at 4).

8         Previously when inmates in the dorm tested positive, they were removed from the dorm

9   and separately housed in isolation, and plaintiff alleges there were tents available for such

10  housing.  However, the third watch housing unit officer informed the dorm population that they

11  would not be removing any of the COVID-19 positive inmates to the designated area for

12  isolation.  (ECF No. 70 at 7.)  Plaintiff asked to speak to the two defendants, and the third watch

13  housing unit officer called defendants who came and spoke with plaintiff.  Plaintiff asked each of

14  the defendants why they were intentionally disregarding a known risk to plaintiff's safety, and

15  notes there were statewide guidelines in place for the isolation of COVID-19 positive inmates.

16  Plaintiff contends neither defendant could provide a legitimate penological purpose for their

17  actions.  The defendants left without removing any of the COVID-19 positive inmates to

18  isolation.  Plaintiff contends that defendants' deliberate disregard for various containment and

19  mitigation strategies to prevent further widespread transmission of COVID-19 put plaintiff at

20  substantial risk of harm because he was forced to remain housed with COVID-19 positive

21  prisoners and, as a result, plaintiff contracted the virus, and now suffers from long-COVID.  (ECF

22  No. 70 at 11-12.)  Plaintiff argues that defendants "dropped the ball," and since both defendants

23  were working overtime, "simply did not want to deal with the complexities of having to find

24  alternative housing for 34 inmates."  (ECF No. 70 at 13.)

25  [1]  Plaintiff's exhibit shows that his negative COVID-19 test was administered at 5:00 a.m. on
    December 17, 2020, and results were made available at 1:24 p.m. on December 19, 2020.  (ECF
26  No. 70 at 52.)  On December 24, 2020, plaintiff was tested again, and on December 26, 2020 at
    11:51 p.m., plaintiff was reported as testing positive for COVID-19 and presumed to be
27  contagious.  (ECF No. 70 at 54.)

28

Plaintiff contends that the guidelines for an "exposed" inmate are totally different from those covering an inmate who tested positive for COVID-19.  For example, all known exposed inmates are only to be isolated with other known exposed inmates and all inmates confirmed positive are only to be isolated with other confirmed positive inmates.  (ECF No. 70 at 14.)  Therefore, whether or not plaintiff was inadvertently exposed to COVID-19 positive inmates for any length of time, per the interim guidance on isolation and quarantine, once defendants were informed of the positive test results, the infected inmates should have been removed to isolation, and plaintiff should not have been housed with confirmed positive inmates.

At the time of this incident, each defendant was notified by plaintiff and the third watch housing unit officer by phone about the COVID-19 outbreak and that plaintiff had tested negative.  (ECF No. 70 at 17.)  Yet neither defendant took steps to address the risk of harm to plaintiff despite each defendant being responsible for E-Facility and charged with protecting and ensuring the health and welfare of all inmates in their assigned area of the facility.  (ECF No. 70 at 18.)  In addition, each defendant had the authority and ability to alter or remove plaintiff from his housing as described in their post orders.  Both defendants failed to take any reasonable measures to abate or avert the substantial risk of harm posed by COVID-19.  Defendants were deliberately indifferent to plaintiff's health and safety because they knew of yet intentionally disregarded the known serious risk of harm by not removing the infected inmates.  Instead, defendants chose to leave the infected inmates in the same dorm with inmates known to have tested negative despite having alternative housing available.  (ECF No. 70 at 19.)  Defendants also disregarded statewide COVID-19 safety protocols and intentionally disregarded various containment and mitigation strategies put in place to prevent further widespread transmission of COVID-19.  This led directly to plaintiff contracting COVID-19 and he now suffers from long COVID-19.  (ECF No. 70 at 20.)  Plaintiff seeks money damages.

Eighth Amendment Standards

Prison conditions violate the Eighth Amendment if they are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  Rhodes v. Chapman, 452 U.S. 337, 346 (1981).  Prison officials may not deprive prisoners of the "minimal

civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted).  The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is reasonable safety." Helling v. McKinney, 509 U.S. 25, 33 (1993) (citation and internal quotations omitted).  In a "failure-to-protect" claim, a prisoner must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was subjectively, deliberately indifferent to inmate's health or safety.  Farmer, 511 U.S. at 834; Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

In order to state an Eighth Amendment claim, a plaintiff must allege that prison officials' conduct was sufficiently harmful (the "objective" test), and that the officials acted with a sufficiently culpable state of mind (the "subjective" test).  See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), cert. denied, 532 U.S. 1065 (2001).  The objective test looks to whether the deprivation was sufficiently serious, as determined by the conditions alleged.  See Farmer, 511 U.S. at 834.  The plaintiff must allege conditions so serious as to be outside the bounds of those which "today's society chooses to tolerate."  Helling, 509 U.S. at 36.

The subjective test requires "more than ordinary lack of due care for the prisoner's interest or safety."  Farmer, 511 U.S. at 835 (quotation omitted).  "[D]eliberate indifference" is the minimum showing of culpability necessary to state a claim.  See id. at 834; Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To be liable for "deliberate indifference," a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  Id. at 838.  A prison official may be liable for an Eighth Amendment violation if the plaintiff plausibly alleges that such official, acting with "deliberate indifference," caused actionable harm.  See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc) (distinguishing Eighth Amendment and Fourteenth Amendment deliberate indifference standards); Ashcroft, 556 U.S. at 678.  "Direct causation by affirmative action is not necessary: 'a prison official may be held liable

6

under the Eighth Amendment if he knows that inmates face a substantial risk of serious harm and disregards that risk *by failing to take reasonable measures to abate it.*'" Castro v. County of Los Angeles, 833 F.3d 1060, 1067 (9th Cir. 2016) (quoting Clem v. Lomeli, 566 F.3d 1177, 1182 (9th Cir. 2009)) (ellipsis omitted) (emphasis in original).

Prison officials have a constitutional obligation to protect inmates from serious communicable diseases.  See Helling, 509 U.S. at 33; Fuller v. Houston, 2021 WL 6496742, at *3 (C.D. Cal. Nov. 19, 2021), report and recommendations adopted, 2022 WL 225671 (C.D. Cal. Jan. 25, 2022); Maney v. Brown, 516 F. Supp. 3d 1161, 1179 (D. Or. 2021) (collecting cases recognizing prison officials' duty to protect inmates from exposure to communicable diseases under the Eighth Amendment).

The Parties' Positions

Defendants argue that correlation is not causation, and that a sequence of events, standing alone, does not demonstrate causation.  The prison was testing inmates weekly for the COVID-19 virus, and during this time plaintiff was housed in an open dorm housing unit with 50 other inmates.  On December 19, 2020, it was determined that 34 out of the 51 inmates had tested positive, meaning that for anywhere from 2.5 to 9.5 days before such results were received, plaintiff was housed among inmates who had the virus and inmates who were exposed to the virus.  Plaintiff fails to plausibly allege that he contracted the virus only after receiving his negative test results and thus due to the decision not to immediately isolate him.  Thus, defendants argue that plaintiff's allegations concerning defendants' acts or omissions after December 19, 2020, fail to state a cognizable claim because plaintiff could have contracted the virus in the 2.5 days between the date plaintiff's sample was taken, and December 19, when the results were received.

Plaintiff's claim that defendants failed to follow guidelines for isolating positive inmates also fails because the key inquiry under these circumstances is not whether officials responded perfectly, complied with all CDCR guidelines, or completely averted the risk; rather, the inquiry is whether prison officials acted reasonably in the face of what was known.  (ECF No. 73 at 5.) Here, prison officials monitored the spread of the virus by testing inmates every week, and if an

7

1    inmate tested positive, isolating the inmate from the rest of the population.  On December 19,

2    2020, officials learned that such approach had not succeeded, and about two-thirds of the dorm

3    population had been infected.  Isolation would be infeasible and potentially pointless because the

4    inmates with negative test results had spent at least 2.5 days (and likely longer) housed with 34

5    infected inmates.  Under these circumstances, the decision not to try and isolate the 34 infected

6    inmates or the remaining 17 who were COVID-negative as of 2.5 days prior, was not deliberately

7    indifferent.  (ECF No. 73 at 5.)  Defendants alleged misconduct -- deciding not to isolate 17 dorm

8    residents who had already had significant exposure from the 34 dorm residents who had tested

9    positive -- does not rise to the level of deliberate indifference.

10          In the alternative, defendants contend they are entitled to qualified immunity because

11   there is no existing authority that would inform reasonable officials that the decision not to try

12   and isolate 17 inmates with negative COVID test results from the 34 infected inmates they had

13   been living in close quarters with for at least 2.5 days since the test samples were collected would

14   violate the Eighth Amendment.

15          Plaintiff's Opposition

16          Plaintiff contends that upon receipt of positive COVID-19 test results, prison staff is

17   directed to immediately remove all infected inmates to isolation unless directed otherwise by the

18   warden, CEO, or medical leadership at the prison.  (ECF No. 75 at 4.)  Plaintiff confirms he was

19   housed in a dorm with 50 other inmates, all of whom were tested every week for COVID-19.  On

20   December 19, 2020, 34 of the 51 inmates tested positive based on samples taken on December 17,

21   2020.  Following these positive test results, defendants Garcia and Moreno were notified of the

22   outbreak, yet intentionally failed to remove the infected inmates to isolation, despite the

23   availability of tents to house them.  Leaving the infected inmates in the dorm failed to mitigate

24   the substantial risks faced by plaintiff and the remaining inmates who had tested negative.

25   Defendants' intentional disregard for CDC and CDCR guidelines, safety protocols and inmate

26   safety resulted in plaintiff contracting COVID-19 and suffering injury.

27          Plaintiff contends that relying on the 2.5 day delay between taking the sample and

28   obtaining the results, delay which is required to complete the lab test, suggests that prison

1    officials do not have to comply with CDC or CDCR guidelines because of the exposure from

2    testing to results.  (ECF No. 75 at 15.)  Plaintiff argues that only key personnel are granted

3    discretion to deviate from such guidelines, and defendants fail to identify who authorized their

4    acts and omissions on December 19, 2020.  (Id. at 17.)  Thus, defendants' failure to follow

5    protocol and isolate the infected inmates exceeded their authority.

6         As to defendants' claim that plaintiff failed to allege that he contracted COVID-19 only

7    after receiving his negative test results, plaintiff contends that it is medically impossible to

8    pinpoint the exact time someone contracts a communicable disease such as COVID-19.  (ECF

9    No. 75 at 19.)

10        Finally, plaintiff argues that there is no legitimate penological purpose for defendants'

11   failure to simply comply with CDCR guidelines and remove the 34 infected inmates to the tents

12   for isolation.  Defendants had the ability, authority and means to mitigate the risks posed by

13   COVID-19 yet refused to do so.

14        Plaintiff contends defendants are not entitled to qualified immunity because it is clearly

15   established that prison inmates have a constitutional right to be protected against a heightened

16   exposure to serious, easily communicable diseases, and defendants knew yet intentionally

17   disregarded the excessive risk posed by retaining the COVID-19 inmates in the dorm on

18   December 19, 2020, where 17 inmates had tested negative.

19        Defendants' Reply

20        Defendants contend that plaintiff fails to address their main argument concerning

21   causation.  Plaintiff fails to plausibly show that defendants, who made housing decisions after the

22   outbreak was discovered, were the cause of plaintiff contracting COVID-19 rather than plaintiff

23   contracted the virus because he was already housed in a dorm with 34 inmates who had

24   contracted the virus.  Defendants point out that plaintiff concedes that it would be impossible to

25   pinpoint when he contracted the virus yet relies on conjecture and speculation to claim defendants

26   caused him to contract the virus.  Plaintiff points to a sequence of events as one causing the other,

27   but, again, correlation does not amount to causation.  While the court must take plaintiff's

28   allegations as true, defendants argue that the allegations are both unreasonable and conclusory

9

1  and therefore fail to state a cognizable claim.

2          Discussion

3          As to the risks posed by COVID-19, "no one questions that [COVID-19] poses a

4  substantial risk of serious harm to [prisoners]."  Plata v. Newsom, 445 F. Supp. 3d 557, 559 (N.D.

5  Cal. 2020); see also Martinez v. Sherman, 2022 WL 126054, at *6 (E.D. Cal. Jan. 13, 2022) ("It

6  is clear that COVID-19 poses a substantial risk of serious harm.") (citations omitted); Fuller,

7  2021 WL 6496742, at *4 ("There is absolutely no question that COVID-19 is a serious

8  communicable disease.") (citations omitted).

9          In examining whether a prison official subjectively acted with deliberate indifference to

10  the risk of COVID-19, the key inquiry is not whether the official responded perfectly, complied

11  with every CDC guideline, or completely averted the risk; instead, the key inquiry is whether the

12  official "responded reasonably to the risk."  Benitez v. Sierra Conservation Ctr., Warden, 2021

13  WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021); see also Plata, 445 F. Supp. 3d at 564 ("The

14  question is whether [p]laintiffs have demonstrated that [d]efendants' response to the COVID-19

15  epidemic is unreasonable.").  A prison official responds reasonably to the risk when he has "not

16  disregarded a known risk or failed to take any steps to address the risk," even if the prison's

17  response has been inadequate.  Benitez, 2021 WL 4077960, at *6.

18          That said, defendants' reliance on causation at this stage of the proceedings is

19  problematic.  Where a plaintiff alleges an Eighth Amendment violation, "proving direct causation

20  by affirmative action is not necessary[.]"  Clem v. Lomeli, 566 F.3d 1177, 1182 (9th Cir. 2009)[2]

21  (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994)); see also Farmer, 511 U.S. at 842 ("[An]

22  Eighth Amendment claimant need not show that a prison official acted or failed to act believing

23  that harm actually would befall an inmate; it is enough that the official acted or failed to act

24  despite his knowledge of a substantial risk of serious harm.").  Of course, to prevail on a § 1983

25  _____

26  [2]  In Clem, the Ninth Circuit reversed and remanded a jury's verdict in favor of a defendant prison
   official because a jury instruction required a finding that the defendant "disregarded" a substantial
27  risk of serious harm to the plaintiff and that the defendant took action that directly caused the
   plaintiff's harm, which "improperly add[ed an] extra element to [the plaintiff's] burden[.]"  Id.,
28  566 F.3d at 1182.

                                          10

1   claim, plaintiff must demonstrate that each defendant's conduct "was the actionable cause of the

2   claimed injury." Harper, 533 F.3d at 1026.

3        Here, absent evidence to the contrary, it is not clear whether defendants responded

4   reasonably to the heightened risk.  At the time of the outbreak, CDCR regulations provided that

5   infected inmates were to be removed and isolated.  While defendants argue that plaintiff could

6   have contracted the virus before defendants made their housing decisions on December 19, 2020,

7   it is just as likely that plaintiff contracted the virus after defendants allowed 34 infected inmates

8   to remain housed with the 17 inmates who were not infected.  Plaintiff has specifically alleged

9   that each defendant was responsible for isolating infected inmates and their failure to do so

10  caused plaintiff to become infected and ultimately, he suffered long COVID.  Plaintiff's

11  allegations, taken as true, are sufficient at this stage of the proceedings to demonstrate causation.

12       For purposes of this motion, the undersigned can also infer that defendants were aware of

13  the risk because it is obvious.  See Farmer, 511 U.S. at 842 (noting "a factfinder may conclude

14  that a prison official knew of a substantial risk from the very fact that the risk was obvious").

15       Further, plaintiff alleges facts demonstrating that he brought his concerns directly to the

16  attention of both defendants, yet no further action was taken to mitigate the substantial risk that

17  plaintiff would become infected if left housed with 34 infected inmates.  Such allegations, taken

18  as true, demonstrate that defendants intentionally disregarded the known risk presented by

19  COVID-19 and failed to take steps to mitigate the heightened risk posed by leaving the uninfected

20  inmates housed with the infected ones.  Benitez, 2021 WL 4077960, at *6 (a prison official

21  responds reasonably to the risk when he has "not disregarded a known risk or failed to take any

22  steps to address the risk").

23       While prison officials attempted to mitigate the risks of COVID-19 by implementing

24  weekly testing, such mitigation efforts also included isolating infected inmates because testing

25  without subsequent action would be pointless.  Plaintiff's allegations, taken as true, present the

26  issue of whether defendants acted reasonably by failing to mitigate the heightened risk of harm

27  posed by COVID-19 by isolating the 34 infected inmates rather than allowing them to remain

28  housed with the 17 uninfected inmates, and their failure to act caused plaintiff to be subjected to

such heightened risk.  It may be at summary judgment that defendants can adduce evidence that because plaintiff was already exposed to COVID-19, the failure to isolate the 34 infected inmates was reasonable, or that additional mitigation efforts under the circumstances were not justified given the high ratio of infection and the length of such exposure.  But this court cannot make such determination on a motion to dismiss.

"[T]here is a general consensus that a prisoner states a cognizable Eighth Amendment conditions of confinement claim if the prisoner sufficiently alleges that a defendant knew of the risks of COVID-19 and had authority to mitigate the risks, yet did nothing to mitigate those risks."  Jones v. Sherman, 2022 WL 783452, at *10 (E.D. Cal. Mar. 11, 2022), findings and recommendation adopted, 2022 WL 4238875 (E.D. Cal. Sept. 14, 2022); Nelson v. Allison, 2023 WL 5004487, at *8 (S.D. Cal. Aug. 4, 2023), report and recommendation adopted, 2023 WL 5538294 (S.D. Cal. Aug. 28, 2023).  The undersigned concludes that plaintiff has sufficiently alleged that defendant knew of the risks of COVID-19 and had authority to mitigate the risks, yet did nothing to mitigate those risks, despite their ability to do so, and their failure to do so caused him to contract COVID-19, in violation of the Eighth Amendment claim.  The motion to dismiss should be denied.

Qualified Immunity

Qualified immunity shields a public official from a suit for damages if, under the plaintiff's version of the facts, a reasonable official in the defendant's position could have believed that his conduct was lawful in the light of clearly established law and the information the official possessed at the time the conduct occurred.  See Pearson v. Callahan, 555 U.S. 223, 231 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson, 555 U.S. at 231 (internal citations and internal quotations omitted).

Qualified immunity is an affirmative defense that must be raised by the defendant. Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993).  It protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory

1   or constitutional rights of which a reasonable person would have known."  Harlow, 457 U.S. at

2   818.  "Where a defendant presents a qualified immunity defense in a Rule 12(b)(6) motion,

3   'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified

4   immunity applies.'"  Romero v. County of Washoe, 602 F. App'x 408, 409 (9th Cir. 2015)

5   (quoting Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001)).

6        When determining whether a public official is entitled to qualified immunity, the inquiry

7   is twofold.  First, the Court must determine whether the plaintiff has alleged the deprivation of an

8   actual constitutional right.  Pearson, 555 U.S. at 231.  Second, the Court must determine whether

9   the right was clearly established.  Id.  The determination of whether the law was clearly

10  established "must be undertaken in light of the specific context of the case."  Saucier v. Katz, 533

11  U.S. 194, 201 (2001), overruled in part on other grounds, Pearson, 555 U.S. at 236.

12       As discussed above, plaintiff has stated cognizable Eighth Amendment claims.

13       Turning to the second prong, defendants argue that plaintiff cannot demonstrate that there

14  is clearly established authority that would inform reasonable prison officials that their decision

15  not to isolate 17 inmates with negative COVID-19 test results from 34 infected inmates, all of

16  whom had been living in close quarters for at least 2.5 days since the test samples were collected,

17  would violate the Eighth Amendment.  But defendants frame the definition too narrowly.

18  "Though a court must not define a right at a high level of generality, [ ] an official's 'legal duty

19  need not be litigated and then established disease by disease or injury by injury.'"  In re CIM-SQ

20  Transfer Cases, 2022 WL 2789808, at *9 (N.D. Cal. July 15, 2022) (quoting Estate of Clark v.

21  Walker, 865 F.3d 544, 553 (7th Cir. 2017)).  It is clearly established that prisoners have a right to

22  be protected from heightened exposure to a serious communicable disease.  See, e.g., Helling v.

23  McKinney, 509 U.S. 25, 33 (1993) (finding prison officials may not "be deliberately indifferent

24  to the exposure of inmates to a serious, communicable disease" under the Eighth Amendment).

25       Here, plaintiff alleges that defendants were deliberately indifferent to the heightened

26  exposure to COVID-19 and failed to mitigate the substantial risk plaintiff would contract

27  COVID-19 by failing to isolate the infected inmates away from the 17 inmates who tested

28  negative, including plaintiff, in violation of both CDCR and CDC regulations.  There is law

1  clearly establishing that prisoners "have a constitutional right to be protected against a heightened

2  exposure to serious, easily communicable diseases," and "that this clearly established right

3  extends to protection from COVID-19."  Jones v. Sherman, 2022 WL 783452, at *10 (E.D. Cal.

4  Mar. 11, 2022), findings and recommendation adopted, 2022 WL 4238875 (E.D. Cal. Sept. 14,

5  2022); Jones v. Pollard, 2022 WL 706926, at *9 (S.D. Cal. Mar. 9, 2022) ("Existing precedent

6  clearly establishes the right of an individual in custody to protection from heightened exposure to

7  a serious communicable disease."); Maney v. Brown, 2020 WL 7364977, at *6 (D. Or. Dec. 15,

8  2020) ("denying qualified immunity to prison officials because inmates had "a clearly established

9  constitutional right to protection from a heightened exposure to COVID-19, despite the novelty of

10 the virus").  The undersigned is persuaded by such authorities.

11      Because plaintiff had a clearly established right to be protected from the substantial risk

12 posed by the heightened exposure to COVID-19, dismissal based on qualified immunity is not

13 warranted at this time.

14      Accordingly, IT IS HEREBY RECOMMENDED that:

15      1.  Defendants' motion to dismiss (ECF No. 73) be denied; and

16      2.  Defendants shall file an answer within fourteen days from the date of an order adopting.

17      These findings and recommendations are submitted to the United States District Judge

18 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19 after being served with these findings and recommendations, any party may file written

20 objections with the court and serve a copy on all parties.  Such a document should be captioned

21 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22 objections shall be served and filed within fourteen days after service of the objections.  The

23 parties are advised that failure to file objections within the specified time may waive the right to

24 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

25 Dated:  March 8, 2024

26

27                                              CAROLYN K. DELANEY
                                               UNITED STATES MAGISTRATE JUDGE

28 /benn1340.mtd

14